## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSI ISAACS, as Personal Representative, for the Estate of Rhindi Kay Isaacs, Deceased, and Next of Kin, | ) ) ) ) |
| | ) Case No. CIV-20-187-KEW |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KONAWA PUBLIC SCHOOLS, INDEPENDENT SCHOOL DISTRICT I-004, THE BOARD OF EDUCATION OF KONAWA PUBLIC SCHOOLS, JOSEPH SCOGGINS, in his official capacity as employee of KONAWA PUBLIC SCHOOLS, and in his individual capacity, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Jessi Isaacs initiated this action on behalf of her deceased daughter, Rhindi Issacs ("Rhindi"), in the District Court of Seminole County, Oklahoma on May 22, 2020, against Defendants Independent School District I-004 of Seminole County, Oklahoma, the Konawa Public Schools (the "School District"), the Board of Education of Konawa Public Schools (the "Board"), Joseph Scoggins ("Scoggins"), in his official capacity as an employee of the Konawa Public Schools, and Oklahoma School Insurance Group ("OSIG"). The action was removed to this Court on June 18, 2020, and the Defendants filed a partial motion to dismiss on June 24, 2020. The parties consented to the undersigned judge on July 28, 2020.

In lieu of filing a response to the partial motion to dismiss, and in accordance with the deadlines contained in the Court's scheduling order, Plaintiff filed an Amended Complaint on August 14, 2020, wherein she sued Scoggins individually and in his official capacity as a School District employee, in addition to the School District and the Board. Plaintiff did not name OSIG as a defendant in the Amended Complaint. On August 28, 2020, the School District and the Board filed Defendants' Partial Motion to Dismiss and Brief in Support (Docket Entry #24) and Defendant Scoggins filed his Motion to Dismiss Amended Complaint and Brief in Support (Docket Entry #25). These motions now come before the Court for ruling.

### Plaintiff's Allegations

On March 8, 2019, Plaintiff's daughter, Rhindi, was a member of the Konawa Junior High softball team, when she was involved in a tragic accident while traveling on the School District's activity bus with five other members of the softball team and its driver, Scoggins, who was a coach and School District employee. On the way back from a softball game in Okemah, Oklahoma, the activity bus was involved in a head-on collision with an SUV, driven by third-party John Tallbear ("Tallbear"). *See* Amended Complaint, ¶¶ 5, 8-10 (Docket Entry # 21).

Plaintiff alleges that prior to the accident, Rhindi was not sitting in her seat but was instead sitting on the floor or the

steps of the bus. She alleges that at the time of the accident, Rhindi was standing in the stairwell of the bus, while the other students were sitting in their seats in the first three rows of the bus. The stairwell portion of the bus was the exact spot where Tallbear's SUV impacted the bus in the collision. Scoggins and the other students survived the crash, but Rhindi did not. Tallbear and another individual did not survive. *Id.* at ¶¶ 9-10, 12.

Plaintiff also alleges that the surviving students have reported they could see the approaching SUV in their lane (the right lane) and that Scoggins communicated to them that he planned to avoid the accident by veering the bus into the left lane prior to impact, in an attempt to have any impact by the SUV be at the back of the bus. Plaintiff contends that prior to impact, Scoggins intentionally veered the bus to the left, yelling "BRACE YOURSELVES," but the bus and SUV collided head on when the SUV returned to the left lane. Plaintiff asserts that other drivers who encountered the SUV pulled over to avoid a collision, and Scoggins should have minimized or avoided the collision by pulling the bus to the shoulder and stopping. *Id.* at ¶¶ 13-15.

Plaintiff further contends that after the accident, when questioned by the middle school principal about Rhindi's whereabouts, Scoggins first reported Rhindi had been on the right side of the bus with two other student athletes. When the principal still could not locate Rhindi, he again asked Scoggins about

3

Rhindi. Plaintiff asserts Scoggins told the principal Rhindi had been transported to the hospital by ambulance. The principal later learned that Rhindi was still on the bus and was deceased. *Id*. at ¶ 11.

Plaintiff asserts the following claims against the School District, the Board, and Scoggins, individually and in his official capacity as a School District employee: (1) a state law claim for negligence under the Oklahoma Governmental Tort Claims Act ("GTCA"); (2) a state law claim under the Oklahoma Constitution, Article II, § 7, based upon a violation of substantive due process rights under the danger creation exception; (3) a federal claim under 42 U.S.C. § 1983 for violations of the Due Process Clause under the Fifth and Fourteenth Amendments to the United States Constitution; and (4) a federal claim under 42 U.S.C. § 1983 for a violation of substantive due process based upon the danger creation exception.

The School District and Board filed their partial motion to dismiss, seeking dismissal of the Board arguing it is not a proper party to the lawsuit because it is not a legal entity capable of being sued. They also sought dismissal of any negligence claims alleged by Plaintiff under certain GTCA exemptions based upon negligent hiring, training, supervision, and retention, failing to adopt or enforce policies related to chaperones, teachers and coaches serving as bus drivers, and prevention of activity buses

4

from being in motion unless all passengers are seated. The School District and Board sought dismissal of Plaintiff's claim brought under the Oklahoma Constitution because no private right of action is available. They further sought dismissal of Plaintiff's federal claims brought under 42 U.S.C. § 1983 for violation of her substantive due process rights, including a claim brought under the danger creation exception. The School District and Board did not seek dismissal of Plaintiff's common-law negligence claim. *See* Defendants' Partial Motion to Dismiss (Docket Entry # 24).

Through his motion to dismiss, Scoggins asserts any negligence claim against him personally is precluded because he was acting in the scope of his employment at the time of the accident. He asserts Plaintiff's state constitutional claim is barred because there is no private right of action under the Oklahoma Constitution. He further asserts that Plaintiff has failed to state a claim under the substantive due process standard or under a danger creation exception of substantive due process. Scoggins maintains that he is entitled to qualified immunity on Plaintiff's federal claims brought against him. *See* Scoggins' Motion to Dismiss (Docket Entry # 25).

### Standard on a Motion to Dismiss

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion

to dismiss filed under Fed. R. Civ. P. 12(b)(6). Clearly, *Bell Atlantic* changed the legal analysis applicable to such motions, creating a "refined standard." *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citation omitted). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atlantic*, 550 U.S. at 570. The Supreme Court did not parse words when it stated in relation to the previous standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic*, 550 U.S. at 546.

The Court of Appeals for the Tenth Circuit has interpreted the plausibility standard as referring "to the scope of the allegations in the complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The *Bell Atlantic* case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ. P. 8(a)(2). *Khalik*, 671 F.3d at 1191. Rather, in *Khalik*,

the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's "short and plain statement" requirement in the case of *Erickson v. Pardus*, 551 U.S. 89 (2007), wherein the Supreme Court found "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 93.

### Initial Matters Regarding Defendants' Motions

1) <u>Request for Court to Strike School District & Board's Motion</u>

As an initial matter, Plaintiff requests that the Court strike the School District and Board's motion to dismiss because two motions were filed in the case, one on behalf of the School District and the Board, and a separate motion on behalf of Scoggins. However, nothing in the Federal Rules of Civil Procedure or this Court's Local Rules precluded Defendants from filing separate motions for each Defendant. The separate Motions to Dismiss complied with the requirements of LCvR 7.1(b),(c).

2) <u>Request that Motion Be Treated as Motion for Summary Judgment</u>

Plaintiff also objects to the School District and Board's introduction section of their motion to dismiss, asserting that the motion should be denied because the introduction references facts that are not included in the Amended Complaint. Federal Rule of Civil Procedure 12(f) references the requirement that a motion to dismiss be treated as a motion for summary judgment when matters

outside the pleadings are presented to and not excluded by the court. The Court declines to convert the motion to one for summary judgment. To the extent the School District and Board included factual information in the introduction section of their motion that was not included in Plaintiff's Amended Complaint, the Court does not consider it in ruling upon the Motion.

3)   <u>The Board is Not a Proper Party to this Action</u>

In addition to alleging state and federal claims against the School District, Plaintiff included the Board of Education for the Konawa Public Schools as a defendant in the case. The School District argues that the Board is not a legal entity subject to suit, citing several federal district court cases from Oklahoma, including one from this district. Plaintiff responds by citing to a case filed by *Board of Education of Oklahoma City Public Schools, Independent School District No. 89, Oklahoma County v. Dowell, et al.*, 498 U.S. 237 (1991), where Plaintiff contends the Board of Education sued on its own behalf. Plaintiff further argues that her federal claims are not limited under Oklahoma law and can be brought against the Board.

Section 5-105 of the Oklahoma Statutes provides generally that every school district is a body corporate and for public purposes, it possesses the usual powers of a corporation. Okla. Stat. tit. 70, § 5-105. It dictates that the name of a school district shall be designated as "Independent (or Elementary, if it

8

is an elementary school district) School District Number ____ (such number as may be designated by the State Board of Education) of _____ (the name of the county in which the district is located . . . ) County, Oklahoma." *Id*. Section 5-105 further states that a school district "may sue and be sued" in its name. *Id*. A board of education is established by Title 70 - "[t]he governing board of each school district in Oklahoma is hereby designated and shall hereafter be known as the board of education of such district." Okla. Stat. tit. 70, § 5-106. Section 5-106, however, makes no mention of any authority by a school board to sue or be sued.

Federal Rule of Civil Procedure 17 states that the capacity for a corporation to sue or be sued is determined by the law of the state in which the corporation was organized. *See* Fed. R. Civ. P. 17(b)(2). Oklahoma law also provides that corporations must sue or be sued in their corporate name. *See* Okla. Stat. tit. 18, § 1016.

The Court finds the cases from the other federal district courts in Oklahoma persuasive on this issue. For example, in *Primeaux v. Independent School District No. 5 of Tulsa County, Oklahoma*, 954 F.Supp.2d 1292 (N.D. Okla. 2012), the court examined the language of Sections 5-105 and 5-106 of Title 70 of the Oklahoma Statutes and determined that "Oklahoma school boards are not separate, suable entities" and dismissed the claims against the school board. *Id*. at 1294-95. The *Primeaux* court also noted

9

that because the school district and the district's board were both named as defendants in the case for the same claims, as Plaintiff has done in this case, the claims were duplicative. *Id.* at 1295. Also, in *Teams Systems International, LLC v. Haozous*, 2015 WL 2131479 (W.D. Okla., May 7, 2015), the court dismissed claims against a board of directors, finding the issue analogous to a board of education of a school district and that "the board may not sue or be sued." *Id.* at 2. Further, in *Hopkins v. Bacone College*, 2016 WL 6604357 (E.D. Okla., Nov. 8, 2016), the court relied on these other decisions and determined that the college's board of trustees was not a suable entity. *Id.* at 2.

Accordingly, the Board is not a proper party and is hereby dismissed from the action.

4) Section 1983 Official Capacity Claims Against Scoggins

Scoggins contends that the federal claims brought against him in his official capacity under § 1983 should be dismissed because they are merely claims brought against the School District, which is also named as a defendant in the action. This Court agrees that such claims are duplicative and should be dismissed as against Scoggins in his official capacity. *See D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1227 (10th Cir. 2004) (recognizing district court's dismissal of official capacity claims as redundant of naming of District); *Rubio v. Turner Unified School Dist. No. 202*, 453 F.Supp.2d 1295, 1300 (D. Kan. 2006) (suit against both the

10

school district and individuals in their official capacities was duplicative). As a result, Scoggins in his official capacity is properly dismissed from this action.

**Plaintiff's Federal Substantive Due Process Claims**

1) <u>Pertinent Standards to Plaintiff's § 1983 Claims</u>

    a) <u>Qualified Immunity-Scoggins</u>

Scoggins contends that he is entitled to qualified immunity regarding Plaintiff's federal substantive due process claims. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity," *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013), which "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law," *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008)(quotations omitted). Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

    b) <u>Municipal Liability-School District</u>

When a § 1983 claim is asserted against a municipality, such as the School District, a court must consider "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins*

11

*v. City of Harker Heights*, 503 U.S. 115, 120 (1992). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original).[1] A municipality is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible[.]" *Id*.

2)   <u>Deprivation of Life-Substantive Due Process Claim</u>

Plaintiff contends in her Amended Complaint that Scoggins and the School District violated Rhindi's substantive due process rights under § 1983 by depriving her of life in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[2]

"The Fourteenth Amendment prohibits a State from depriving 'any person of life, liberty, or property without due process of law.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1258 (10th Cir. 2013),

---

[1]      In the Amended Complaint, Plaintiff alleges that "[p]ursuant to respondeat superior, Konawa Independent School District as employer of their agent, Scoggins, are liable for the willful acts of its employee, while he was driving the activity bus." <u>Amended Complaint</u>, ¶ 42.

[2]      The Court notes that "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteenth Amendment applies to actions by state governments." *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). Based on the allegations of the Amended Complaint, Plaintiff has no claim for relief under the Fifth Amendment.

quoting U.S. Const. amend. XIV, § 1. The substantive component of the Due Process Clause of the Fourteenth Amendment "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The Tenth Circuit has held that "there must be an element of deliberateness in directing the misconduct toward plaintiff before the Due Process Clause is implicated." *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996); *see also Daniels*, 474 U.S. at 331 (noting the guarantee of due process applies to "deliberate decisions of government officials to deprive a person of life, liberty, or property"). However, the clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). A violation of substantive due process is "not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328 (emphasis in original).

A substantive due process violation also requires that the state actor engage in conduct that "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1962). To meet this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by

13

abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995); *see also Koessel*, 717 F.3d at 750 ("Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard.") (citation omitted). "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574. This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" *Id*.[3] Whether such conduct shocks the conscience is a question of law for the court. *See Perez v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005); *see also Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.") (quotation omitted).

In the Amended Complaint, Plaintiff alleges it was at least grossly negligent for Scoggins to: (1) disobey the rules of the

---

[3]     When considering whether conduct is conscience shocking, courts should "bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Uhlrig*, 64 F.3d at 573 (citations omitted).

road and veer into oncoming traffic, (2) fail to locate Rhindi after the accident, and (3) misrepresent her whereabouts to the principal. She also contends "it was totally without regard to the life & wellbeing of Rhindi Isaacs for . . . Scoggins to allow Rhindi to stand in the stair[well] of the bus when he knew that his plan was to impact the oncoming vehicle." *Id.* at ¶¶ 16-17.

Considering Plaintiff's allegations against Scoggins as true, the Court does not find Scoggins' conduct as conscience shocking in a constitutional sense. Plaintiff has not demonstrated deliberate conduct by Scoggins wherein he intended to cause the death of Rhindi. The Amended Complaint asserts that Scoggins veered from the right lane of traffic into the left lane of traffic to avoid hitting Tallbear's SUV, which was traveling in the right lane. Thus, he did not veer into oncoming traffic. The students were sitting in the first three rows of the bus and Rhindi was in the stairwell—all at the front of the bus. As alleged by Plaintiff, Scoggins' plan was that if the SUV hit the bus, it would hit the rear of the bus. Although his plan in hindsight could certainly be viewed as negligent or perhaps even reckless to the safety of all the students on the bus, Scoggins' conduct was not deliberate toward Rhindi and was a decision made in the moment to veer into the left lane to avoid the SUV, instead of pulling to the side of the road. Moreover, although the allegations of Scoggins' conduct after the accident are troubling to the Court, like his conduct

leading up to the accident, Scoggins' conduct is likely negligent, but it does not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574; *see also DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000) ("[M]ere negligence does not shock the conscience.").

As to the School District, Plaintiff alleges the Board knew there was a chronic shortage of bus drivers and chaperones, but it continued to vote and approve activity trips for students placing them in danger of injury or death. Amended Complaint at ¶ 23. Plaintiff contends the School District was deliberately indifferent to student safety by: (1) violating national safety standards, specifically the National School Transportation Specifications & Procedures, recommended for all Oklahoma schools, which required that chaperones accompany students on activity trips and that students remain seated in their seats while the bus was moving, (2) requiring teachers and coaches to act as drivers because of understaffing, resulting in distracted drivers and violations of federal motor carrier guidelines limiting drivers to being on duty for no more than fifteen hours, and (3) failing to train their bus drivers to stay right of center or to pull off on the shoulder if necessary to avoid a collision. Plaintiff asserts that these policies, customs, or procedures of the School District were deliberately indifferent "to the constitutional rights of

16

their students' life and liberty," and resulted in Rhindi's death. *Id.* at ¶¶ 24-30.

Construing Plaintiff's allegations against the School District as true, they do not rise to the level of conscience shocking conduct. *See Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009) ("To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking—the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'"), quoting *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003). Violations of state law do not constitute a violation of the Federal Constitution. *See Nordlinger v. Hahn*, 505 U.S. 1, 26 (1992) ("A violation of state law does not by itself constitute a violation of the Federal Constitution."). Moreover, failing to follow certain state and federal regulations does not rise above the level of negligence. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003) (finding that state defendants' failure to conduct requisite background and insurance checks based on state and federal statutes and regulations governing child care licensing did not rise above the level of negligence and therefore did not constitute conscience-shocking conduct). Further, "[e]ven knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *DeAnzona*, 222 F.3d at

17

1235 (10th Cir. 2000); *see also Moore*, 438 F.3d at 1041 ("[T]he Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist in the workplace is not necessarily conscience shocking."), quoting *Uhlrig*, 64 F.3d at 574, citing *Collins*, 503 U.S. at 128.

Accordingly, although the death of three individuals in such a manner is always tragic and shocking, the Court finds the conduct of Scoggins and the School District is not shocking to this Court's judicial conscience in a constitutional sense. In making this determination, the Court has considered the basic principles set out by the Supreme Court for evaluating substantive due process claims, and in reaching the decision, exercises restraint in defining the scope of such a claim, accounts for concern that § 1983 not replace state tort law, and gives deference to local policymaking bodies in making decisions impacting upon public safety. *Uhlrig*, 64 F.3d at 573 (citations omitted). Scoggins is therefore entitled to qualified immunity on this claim, and Plaintiff has failed to satisfy the requirements for municipal liability against the School District.

3)  <u>Danger creation exception-Substantive Due Process</u>

Plaintiff further alleges that "the acts and omissions of the [D]efendants constituted a state-created danger that caused [Rhindi's] death." *Id*. at ¶ 30. "Generally, state actors may only

18

be held liable under § 1983 for their own acts, and not for the violent acts of third parties." *Ruiz*, 299 F.3d at 1182, citing *DeShaney*, 489 U.S. at 197. There are, however, two exceptions to the general rule: (1) the special relationship exception and (2) the danger creation exception. Here, Plaintiff alleges only a substantive due process violation under the danger creation exception.[4]

"To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger." *Hernandez*, 734 F.3d at 1259, citing *Gray v. University of Colo. Hosp. Auth.*, 672 F.3d 909, 920 & n.8 (10th

---

[4]     If Plaintiff was raising a substantive due process claim against Scoggins and the School District under the special relationship exception, her claim would fail. A special relationship arises when "the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause[.]" *DeShaney*, 489 U.S. at 200. "Inaction by the state in the face of a known danger is not enough to trigger the obligation[,]" because "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.; see also Graham v. Independent School District No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) ("In the absence of a custodial relationship, we believe plaintiffs cannot state a constitutional claim based upon the defendants' alleged knowledge of dangerous circumstances."). In *Maldonado v. Josey*, the Tenth Circuit determined that "[a]lthough a child may well be in the 'custody' of the school authorities during school hours, this custody does not amount to a restraint that prohibits the child and his parents from caring for the basic needs of the child." 975 F.2d 727, 732 (10th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993). Thus, "[t]he Tenth Circuit has held repeatedly that because schools do not provide for a child's basic needs, schoolchildren do not have a special relationship with the government." *DeAnzona*, 222 F.3d at 1234.

Cir. 2012). If these preconditions are met, a plaintiff must then satisfy all elements of a six-part test: "(1) [defendant] created the danger or increases plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Id.* (quotation omitted).

The Court finds that Plaintiff has not satisfied either pre-condition of the danger creation exception. She has pointed to no conduct by Scoggins that was affirmative conduct that placed Rhindi in danger. First, Scoggins' conduct prior to the accident was not directly aimed at Rhindi. *See Ruiz*, 299 F.3d at 11883 ("[T]he conduct should be directed at a discrete plaintiff[.]"). Second, Plaintiff does not allege that Scoggins told Rhindi to stand in the stairwell of the bus. Plaintiff only alleges that he did not stop her from doing it. Allowing her to stand in the stairwell does not constitute affirmative conduct. *See Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) ("There is, however, a question as to whether there is sufficiently affirmative conduct on the part of the state in placing the plaintiff in danger. Our precedents consistently conclude that mere negligence or inaction is not enough.").

Likewise, Plaintiff has not demonstrated affirmative conduct by the School District. In *Gray v. University of Colorado Hosp. Auth.,* 672 F.3d 909 (10th Cir. 2012), the Tenth Circuit found that "because the act of establishing such policies and customs does not pose a direct threat to any one particular individual but affects a broader populace, we deem such act too remote to establish the necessary causal link between the danger to the victim and the resulting harm." *Id*. at 926, citing *Ruiz*, 299 F.3d at 1183. It concluded that "Defendants' adoption of policies and customs generally applicable to all EMU patients, even if done in reckless disregard of a generalized risk, did not constitute affirmative conduct sufficient to impose § 1983 liability on Defendants under the state-created danger theory." *Id*. at 927. The same would be true as to any of the School District's alleged policies, customs, or procedures in this case.

The other precondition, private violence, "requires a private act of violence to have caused the victim's harm." *Hernandez*, 734 F.3d 1254, 1259 (10th Cir. 2013), citing *Gray*, 672 F.3d at 928. "Violence requires "*[a]t the very least*" some degree of deliberateness on the part of the private actor; negligence is insufficient." *Id*., citing *Gray*, 672 F.3d at 928-29. Plaintiff has not alleged in the Amended Complaint that Tallbear's driving was an act of violence. The only mention of any action by Tallbear is "that the factual allegations as described herein constitute

21

negligence and/or gross negligence" of Defendants and Mr. Tallbear. Amended Complaint, ¶ 21, p. 6. "[N]o constitutional violation occurs when a private party's underlying negligent act is directly responsible for the victim's harm." *Hernandez*, 734 F.3d at 1259.

In any event, even if Plaintiff can satisfy the preconditions, she must still meet the six-part test, which includes a showing that the conduct is conscience shocking. *See Moore*, 438 F.3d at 1042 (noting that a plaintiff's duty to allege actions that shock the conscience applies to the special relationship and danger creation exceptions). As previously discussed herein, the Court determined that the alleged conduct of Scoggins and the School District does not shock the judicial conscience in the constitutional sense.

Accordingly, Scoggins is entitled to qualified immunity on Plaintiff's state-created danger substantive due process claim, and Plaintiff has failed to satisfy the requirements for municipal liability against the School District.

### Amendment of the Pleadings

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." However, denial of amendment is appropriate, "if the amendment would be futile[.]" *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

22

"Rule 7 requires a request for relief to be made by a motion that (1) is in writing, (2) 'states with particularity the grounds for seeking the order,' and (3) specifies the relief sought." *Albers v. Board of Cty. Comm'rs of Jefferson City, Colo.*, 771 F.3d 697, 706, quoting Fed. R. Civ. P. 7(b). In *Albers*, the court "recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Id.* Here, Plaintiff never sought leave to file another amended complaint by formal motion nor did she request to do so in her responses. *See Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave.").

Moreover, even after Defendants filed their latest motions to dismiss, Plaintiff again did not seek to amend, but she instead included additional factual allegations in her response briefs. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time. Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss.").

In her response to Defendants' motions, Plaintiff includes additional factual information that was not part of the Amended Complaint. Specifically, she includes references in the response brief alleging Scoggins violated provisions in the Oklahoma School Bus Driver's Manual, the Konawa Public School Bus Rider's Guide, and the Oklahoma Commercial Driver's License Manual. She also alleges facts related to the accident that were not included in the Amended Complaint, including that Scoggins "intentionally steered the bus into the SUV[,]" "met with the surviving members of the softball team to inform them to keep secret his plan to steer into the path of the oncoming SUV[,]" and that "[a]fter impact, based on the positioning of her remains, Scoggins stepped over Rhindi in order for him to exit the bus." *See* Plaintiff's Response to Scoggins' Motion to Dismiss, pp. 6-11 (Docket Entry # 29).

Regarding the School District, Plaintiff includes the following additional facts in her response: (1) references to the Student Handbook, Bus Rider's Guide regarding chaperones; (2) notifications to the Board by the principal that teachers and coaches were overworked and it was dangerous for them to transport students on the activity bus after working a full day; (3) notification to the Board by the principal that "new drivers needed to be hired to safely transport students;" (4) personnel who transported students on the activity buses "routinely began their

24

bus driving duties at 5:00 a.m. in the bus yard and continue their duties with regard to transporting students on activity trips until 10:00 p.m.;" (5) "Scoggins met with the surviving members of the softball team to inform them to keep secret his plan to steer into the path of the oncoming SUV;" (6) the concern of parents over the exhaustion of coach/bus drivers which resulted in parents not allowing their child to ride on the activity bus; and (7) notifications to the Board by the principal and concerned parents that coaches/bus drivers were violating the 15-hour rule. *See* Plaintiff's Response in Opposition to Defendants' Partial Motion to Dismiss, pp. 6-8, 10-11 (Docket Entry # 28).

In any event, even considering the additional factual information contained in Plaintiff's responses, the Court finds Plaintiff fails to allege conduct by Scoggins or the School District that is conscience shocking in a constitutional sense for the same reasons addressed herein. Accordingly, the Court finds amendment would be futile.

### State Law Claims

As detailed herein, Plaintiff's Amended Complaint fails to state a federal claim upon which relief can be granted against Scoggins or the School District. The only remaining claims are state law claims of negligence and claims under the Oklahoma Constitution, which come before the Court only on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). "When all

25

federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). If a case has been removed from state court and the federal claims are dismissed by the federal court, it has discretion to either dismiss the state law claims or remand them to state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, based on the authority in 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of negligence and violation of the Oklahoma Constitution. These claims are hereby remanded to the District Court of Seminole County, Oklahoma.

IT IS THEREFORE ORDERED that Defendants' Partial Motion to Dismiss and Brief in Support (Docket Entry #24) is hereby **GRANTED**, in relation to Plaintiff's claims for violations of Rhindi Isaac's Fourteenth Amendment rights to substantive due process. Moreover, the Board is dismissed as a party to the action. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the School District, and they are therefore **REMANDED** to the District Court of Seminole County, Oklahoma.

IT IS FURTHER ORDERED that Defendant Scoggins' Motion to Dismiss Amended Complaint and Brief in Support (Docket Entry #25)

is hereby **GRANTED,** in relation to Plaintiff's claims for violations of Rhindi Isaac's Fourteenth Amendment rights to substantive due process. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Scoggins, and they are therefore **REMANDED** to the District Court of Seminole County, Oklahoma.

      IT IS SO ORDERED this 31st day of March, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE